| | |
|---|---|
| TREGG WILSON | CIVIL ACTION |
| VERSUS | NO: 13-5612 |
| MIKE TREGRE | SECTION: J(5) |

## ORDER AND REASONS

Before the Court are cross *Motions for Summary Judgment* filed by Plaintiff, Tregg Wilson, ("Plaintiff") **(Rec. Doc. 52)** and Defendant, Sheriff Mike Tregre ("Sheriff Tregre") **(Rec. Doc. 56)**. Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that Plaintiff's *Motion for Summary Judgment* **(Rec. Doc. 52)** should be **DENIED** and that Defendant's *Motion for Summary Judgment* **(Rec. Doc. 56)** should be **GRANTED.**

## PROCEDURAL AND FACTUAL BACKGROUND

The facts as alleged by Plaintiff are as follows: Plaintiff has been a member of the Louisiana State Bar since 2001 but closed his law practice in 2012 to begin working as Chief Deputy in the Sheriff's Office of St. John the Baptist Parish, Louisiana. At that time, Sheriff Tregre was just beginning his tenure as Sheriff of St. John the Baptist Parish. On May 14, 2013, Plaintiff attended a task force meeting at the Criminal Investigative Division ("CID"). Plaintiff alleges that after that meeting, Detective Robert Hay,

one of the highest ranking officers in the CID, informed Plaintiff that he believed the interrogation rooms at CID were under 24-hour video and audio surveillance.

The CID contains three interrogation rooms, which are used for detectives to interview suspects, but are occasionally used for other purposes, such as allowing suspects to meet with their attorneys. It appears to be undisputed that each interrogation room contains visible equipment that records audio and video.[1] Plaintiff alleges:

> All three rooms have a video camera that sends an audio/video feed back to the computer network at CID. The video feed can be viewed on three large monitors (one for each room) near the back of the CID office. On the same rack as the monitors are three DVD recorders that, with the press of the record button, can permanently capture the interview of the person in the room. This manual control is used by detectives in CID to capture for future use, including trial, interviews and interrogations of witnesses and suspects. After recording an interview, the detective would check the video, then make multiple copies for use by the DA's office, the Sheriff's office and for production in criminal discover [sic].
>
> Detective Hay, however, suspected that the video was going a third place. According to the Head of IT for the department, the video feed was also being recorded by a device called a Milestone Server. Originally set up to record video feeds from crime cameras throughout the Parish, IT Head Troy Hidalgo had also routed the video feed from the CID Interrogation rooms to the Milestone

---

[1] Sheriff Tregre describes the equipment in the following way: Each of the three CID interrogation rooms has an overt camera mounted on the ceiling above the door. Two microphones are also installed for redundancy in each room. One is hard mounted to the desk and the second on the ceiling above the desk. Both microphones are plainly visible to occupants of the room.

(Rec. Doc. 56-2, p. 2).

> Server, ostensibly for a "backup copy" of the
> interrogations. This feed, unlike the manual feed,
> however, operated on a motion-activated sensor and would
> record video whenever a person was in the room.

(Rec. Doc. 52-1, p. 3). Defendant admits that there are motion-operated recordings saved on the Milestone server, and claims that these recordings are intended to serve as emergency backups in case of an equipment failure in the primary recording system. According to Defendant, these backup recordings are "redundant" and are archived for thirty (30) days, at which time the older backup videos are automatically overwritten by newer backup videos.

Plaintiff alleges that as an attorney, he saw potential legal problems with these motion-activated recordings because a recording might be motion-activated while the rooms are in use for suspects to meet with their clients, and this could violate attorney-client privilege, the Fourth Amendment, Louisiana's wiretapping laws, and laws regarding disclosure of evidence, such as Louisiana Code of Criminal Procedure Article 716 and the United States Supreme Court's decision in *Brady v. Maryland*. Plaintiff alleges that his concern was realized because a certain criminal defendant used an interrogation room to meet with his attorney, and the detective turned off the monitors, but all the while a video was being recorded due to motion activation and was being stored on the Milestone server. Plaintiff claims that he knew that the Sheriff's office was not disclosing the automatic backup recordings in criminal proceedings.

Plaintiff alleges that he discussed the problem with Sheriff Tregre, and while the Sheriff shut down the backup recordings, he informed Wilson that the Sheriff's Office would not disclose any video recordings in any criminal proceedings. Plaintiff claims that Sheriff Tregre ordered an internal investigation, and so Wilson made a report to Internal Affairs. Plaintiff then forwarded emails detailing his correspondence with Sheriff Tregre to the District Attorney. The District Attorney then requested that the State Police investigate the matter, and the State Police took statements from several parties, including Plaintiff, Sheriff Tregre, Detective Hay, and Troy Hidalgo. The State Police found no criminal intent on the part of the Sheriff's Office but found that *Brady* may have been violated. The District Attorney then sent a letter to the Sheriff's Office, requesting that all video be produced for review under *Brady*.

On June 10, 2013, Sheriff Tregre terminated Plaintiff's employment, and Plaintiff claims that his termination was in retaliation for having exercised his right to free speech and having acted as a whistle blower in reporting illegal activity on the part of the Sheriff's Office. Plaintiff filed suit against Sheriff Tregre on August 28, 2013, bringing the following causes of action: (1) a Section 1983 claim based on retaliation against Plaintiff for his exercise of protected speech under the First

Amendment,[2] (2) retaliation against Plaintiff for his exercise of protected speech under Article I, Section 7 of the Louisiana Constitution, and (3) violation of the Louisiana Whistleblower statutes.[3] On August 12, 2014, both parties filed the instant cross motions for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); *Little v. Liquid Air Corp.*, 37 F.2d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). The Court will examine the evidence in the light most favorable to the nonmoving party. *Naquin v. Fluor Daniel Servs. Corp.*, 935 F. Supp. 847, 848 (E.D. La. 1996) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). While all reasonable inferences are drawn in favor of the nonmoving party, a party cannot defeat summary judgment with conclusory

---

[2] Plaintiff also sought an award of attorneys' fees pursuant to 42 U.S.C. § 1988.
[3] Plaintiff stated causes of action pursuant to both La. R.S. § 23:967 and La. R.S. § 42:1169.

allegations or unsubstantiated assertions. *Little*, 37 F.2d at 1075. A Court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish

a genuine issue for trial. *See, e.g., id.* at 325; *Little*, 37 F.3d at 1075.

## DISCUSSION

### A. Section § 1983 Claim Based on First Amendment Retaliation

To succeed in a First Amendment retaliation claim, a public employee must prove four elements:

(1) he suffered an adverse employment action;

(2) he spoke as a citizen on a matter of public concern;

(3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and

(4) the speech precipitated the adverse employment action.

*Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (internal citations omitted).[4]

The Court finds that Plaintiff has failed to meet his burden of proof with respect to the second element because Plaintiff engaged in speech in his capacity as Chief Deputy, not as a citizen. For First Amendment purposes, the question of whether a public employee is speaking as a citizen on a matter of public concern is a question of law for the Court. *See Garcetti v.*

---

[4] Plaintiff was discharged, and the termination of his employment clearly constitutes an adverse employment action. Under Fifth Circuit precedent, "[a]dverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994) (citing *Rutan v. Republican Party*, 497 U.S. 62, 74 (1990)).

Because the Court finds that Plaintiff has failed to meet his burden of proof with respect to the second element of the First Amendment retaliation analysis, the Court need not analyze the third and fourth elements.

*Ceballos*, 547 U.S. 410, 421 (2006). If the Court finds that the employee did not speak as a citizen on a matter of public concern, there is no First Amendment protection. *Id*. at 418. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* Public employee speech can be protected even "when speech concerns information related to or learned through public employment." *Lane v. Frank*, 134 S.Ct. 2369, 2377 (2014).

The Supreme Court has recently noted that the "critical question" regarding whether an employee's speech is protected as a citizen is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 134 S.Ct at 2379. The question before the court is thus whether Plaintiff's disclosures to the District Attorney and subsequently to the State Police regarding what he perceived to be illegal recordings fell within his job duties as Chief Deputy.[5] Defendant argues that Plaintiff, as the commissioned

---

[5] Plaintiff notes that there are four different types of speech at issue in this case: "(1) the disclosures to Sheriff Tregre after the initial discovery, (2) the disclosures to Internal Affairs pursuant to the Sheriff's direction, (3) the disclosures to the District Attorney after Wilson believed the internal investigation was not proceeding and (4) sworn testimony before the Louisiana State Police in their investigation." (Rec. Doc. 63, p. 3). The Court finds that it is unnecessary to address the first two instances, finding that they are clearly within Plaintiff's official duties as an employee of the Sheriff's Office, because it is the duty of a police officer to internally report any criminal activity performed by his fellow officers. *Rivera v. City of Everman*, No. 08-56, 2008 WL 4923107, at *7-8 (N.D. Tex. Nov. 18, 2008) (finding that a police officer's internal report to his supervisor regarding criminal activity

Chief Deputy, was required by his position to report what he believed to be illegal recordings, and therefore, Plaintiff's speech was made in his capacity as Chief Deputy. (Rec. Doc. 56-2, p. 7-8). Plaintiff contends that his report to the District Attorney and the State Police was made outside of his duties as Chief Deputy Sheriff, and in his individual capacity, as seen by the fact that he made the report "without the knowledge or consent of the Sheriff." (Rec. Doc. 63, p. 4).

The Court finds, regardless of the Sheriff's knowledge of Plaintiff's actions, that Plaintiff's disclosures were made within his official employment duties, and are thus unprotected. The Court agrees with Defendant that as Chief Deputy Sheriff, Plaintiff had a duty to report to outside law enforcement any action he believed contravened the law or violated Constitutional rights. Specifically, as Defendant notes, Plaintiff was bestowed with the "responsibility for enforcement of all state, parish, local laws and ordinances." (Rec. Doc. 56-2, p. 7). As such, Plaintiff had a duty to report the redundant recording capabilities of the CID, as he reasonably believed this was a violation of suspects' Fourth Amendment rights. Moreover, Plaintiff made the disclosures to both the District Attorney as well as the State Police during working hours. As such, the Court finds that the disclosure of conduct

---

among his fellow officers was not protected speech). The court will thus only address the latter two instances of speech.

which Plaintiff reasonably believed violated Constitutional rights fell within his duties as Chief Deputy Sheriff.

Plaintiff's disclosures to the District Attorney and State Police were made pursuant to his duties as a public employee, rather than as a citizen, and in accordance with the Supreme Court's ruling in *Lane*, these disclosures do not receive First Amendment protection. Because Plaintiff has failed to satisfy the second element of a First Amendment retaliation claim, Plaintiff's Section 1983 claim, alleging First Amendment retaliation, should be dismissed with prejudice.

## B. Supplemental Jurisdiction

The Court having dismissed Plaintiff's Section 1983 claim, the only issues remaining in this litigation are issues of Louisiana state law. Although it is the general rule that where federal claims are dismissed before trial, a federal court should also dismiss pending state claims, that rule "is neither absolute nor automatic." *Newport Ltd. v. Sears, Roebuck and Co.*, 941 F.2d 302, 307 (5th Cir. 1991), *cert. denied*, 502 U.S. 1096 (1992). Rather, the federal court has discretion to exercise supplemental jurisdiction over the remaining state law claims. *Id.; see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). The court *may* decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 if:

(1) the claim raises a novel or complex issue of State

law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C.A. § 1367(c) (West 1990). In determining whether to exercise supplemental jurisdiction, the court must also balance "judicial economy, convenience, fairness, and comity." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999), *cert. denied*, 528 U.S. 1076 (2000) (internal citations omitted).

The Court finds that there is no novel or complex issue of state law present in this case such that the Court should decline to exercise supplemental jurisdiction. Additionally, this matter has been pending in federal court for approximately one year, discovery is closed, and the case is ripe for trial. The jury trial in this matter is set to commence on September 29, 2014, less than a month from the date of this order. The Court will exercise supplemental jurisdiction over the pending state law claims in this matter, finding that it would constitute a waste of judicial resources to decline to exercise such jurisdiction. *See generally Newport*, 941 F.2d at 307-08; *Batiste*, 179 F.3d at 227-28; *Brookshire Bros. Holding, Inc. v. Dayco Prods. Inc.*, 554 F.3d 595, 602-04 (5th Cir. 2009), *cert. denied*, 557 U.S. 936 (2009); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 455-56 (5th Cir. 1996); *Port of S. La. v. Tri-Parish Indus., Inc.*, 927 F.Supp.2d 332, 338-39 (E.D. La.

11

2013) (Milazzo, J.); *Chauvin v. Radioshack Corp.*, No. 08-4255, 2009 WL 961247, at *2-3 (E.D. La. Apr. 8, 2009) (Africk, J.), *aff'd*, 332 Fed. App'x 994 (5th Cir. 2009).

## C. Louisiana Constitutional Claim Based on Protected Speech Retaliation

The Constitution of the State of Louisiana of 1974 states: "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom." La. Const. art. I, § 7. This Court has held:

> [U]nder Louisiana jurisprudence, judicial determination of a claim brought pursuant to the parallel sections of the federal constitution is applicable to Article 1, sections 7 and 8 of the state constitution. *State v. Franzone,* 384 So.2d 409, 411 (La.1980) (The state constitution's guarantee of freedom of the press and of expression was designed to serve the same purpose as the same guarantee in the federal constitution, and provides at least coextensive protection.) . . . .

*Delcarpio v. St. Tammany Parish Sch. Bd.*, 865 F. Supp. 350, 362 (E.D. La. 1994) (Carr, J.) *rev'd on other grounds, Campbell v. St. Tammany Parish Sch. Bd.*, 64 F.3d 184 (5th Cir. 1995).

Plaintiff's claims pursuant to the Louisiana Constitution are essentially identical to his claims under the First Amendment to the Constitution of the United States. (Rec. Doc. 1, p. 5-7). Therefore, for the reasons expressed above, the Court finds that Plaintiff's claim pursuant to Article I, Section 7 of the Constitution of Louisiana should be dismissed with prejudice.

## D. Louisiana Whistleblower Statutes

Plaintiff's complaint stated causes of action pursuant to both La. R.S. § 23:967 and La. R.S. § 42:1169. (Rec. Doc. 1). Sheriff Tregre moved for summary judgment with respect to Plaintiff's claims under both statutes.

### 1. La. R.S. § 42:1169

It is undisputed that Plaintiff did not make a proper report as required by this statute. *See* LA. REV. STAT. ANN § 42:1169 (2014). Plaintiff does not oppose Sheriff Tregre's motion with regard to his claim under La. R.S. § 42:1169. (Rec. Doc. 63, p. 8 n.6). Therefore, the Court finds that Plaintiff's claim under La. R.S. § 42:1169 should be dismissed with prejudice.

### 2. La. R.S. § 23:967

Under La. R.S. § 23:967, the Louisiana Whistleblower Statute:

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.
B. An employee may commence a civil action in a district court where the violation occurred against any employer who engages in a practice prohibited by Subsection A of this Section. If the court finds the provisions of Subsection A of this Section have been violated, the plaintiff may recover from the employer damages, reasonable attorney fees, and court costs.
C. For the purposes of this Section, the following terms shall have the definitions ascribed below:

13

(1) "Reprisal" includes firing, layoff, loss of benefits,
or any discriminatory action the court finds was taken as
a result of an action by the employee that is protected
under Subsection A of this Section; however, nothing in
this Section shall prohibit an employer from enforcing an
established employment policy, procedure, or practice or
exempt an employee from compliance with such.
(2) "Damages" include compensatory damages, back pay,
benefits, reinstatement, reasonable attorney fees, and
court costs resulting from the reprisal.
D. If suit or complaint is brought in bad faith or if it
should be determined by a court that the employer's act
or practice was not in violation of the law, the employer
may be entitled to reasonable attorney fees and court
costs from the employee.

LA. REV. STAT. ANN § 23:967 (1997). To succeed in a claim under the

Whistleblower Statute, a plaintiff "must prove that her employer

committed an *actual* violation of state law." *Goulas v. LaGreca*, 945

F.Supp.2d 693, 702 (E.D. La. 2013) (Fallon, J.), *aff'd*, 557 Fed.

App'x 337 (5th Cir. 2014) (emphasis added).

Plaintiff contends that the motion-activated video tapping

conducted by the Sheriff's Office violates (1) attorney-client

privilege, (2) the Fourth Amendment, (3) Louisiana wiretapping

laws, and (4) laws regarding disclosure of evidence, such as

Louisiana Code of Criminal Procedure Article 716 and the United

States Supreme Court's decision in *Brady v. Maryland*.

## a. Attorney-Client Privilege

Sheriff Tregre argues that:

the attorney-client privilege is an evidentiary provision
regarding rules of disclosure related to communications
between a lawyer and his client. It is a testimonial
privilege, not a law, and it provides no basis for a
claim under La. R.S. 23:967.

(Rec. Doc. 56-2, p. 15). The Court agrees that the attorney-client privilege is solely a testimonial privilege and is not a substantive law that the Sheriff's Office could have potentially violated.

### b. Fourth Amendment

The Fourth Amendment prohibition of unreasonable searches "protects only reasonable expectations of privacy." *In re U.S. for Historical Cell Site Data*, 724 F.3d 600, 615 (5th Cir. 2013). Sheriff Tregre argues that a suspect could have no reasonable expectation of privacy in the interrogation rooms at issue, which are located at a police station and "in the obvious presence [of] a video camera and multiple microphones." (Rec. Doc. 56-2, p. 15). Plaintiff agrees that "normally there would be no Fourth Amendment right of privacy in a police interrogation room." (Rec. Doc. 63, p. 8).

However, Plaintiff argues that in this case, the police assured suspects that their communications were private. Plaintiff alleges that this happened in at least one particular instance with a criminal defendant named Dante Bond. To support this contention, Plaintiff cites only to the following deposition testimony of Christie Chauvin, an employee at the Sheriff's Office:

Examination by Counsel for Sheriff Tregre:

> Chauvin: I can remember a few times where attorneys
> were there. Now if they were ever, you know, left
> alone, I don't know.

<u>Defense Counsel</u>: When you say attorneys were there, meaning where?

<u>Chauvin</u>: Um – Where attorneys came in with their clients. It wasn't specifically on my cases, so, you know, I'm not going to say that I paid attention to the case the whole time. . . . You know, sometimes an attorney may come in with his client to give a statement, and again, it's rare, and we may give them a few minutes. And we turn the monitor off.

<u>Defense Counsel</u>: In the interrogation room?

<u>Chauvin</u>: Yes. . . . [B]ecause again, we've always been under the assumption that we controlled what's going on right there at that time.

<u>Defense Counsel</u>: … Is there a particular case, or – was it your case, or was it something told you, where the attorney came in and said, hey, look, I need a few minutes with my client, can we talk here in this interrogation room, and you left them there to talk?

<u>Chauvin</u>: Well, I'm not saying – I'm just saying that I can remember a few cases where attorneys came in. I don't know if they took a few moments with their client. Um – you know, sometimes attorneys will come in – I don't know if they take – you know, sometimes they do … come in with their client. It's not very often that you have attorneys come in.

<u>Defense Counsel</u>: But you're not aware of any specific case, as we sit here today, where you can think of the attorney, the attorney's name, the suspect's name, or the defendant's name, where that actually happened. Can you? … Where the attorney says, I need a few minutes with my client, can you step out and let me talk to my client?

<u>Chauvin</u>: Well, I'm not exactly sure if it happened, so, no, I'm not going to speculate. So, no.

<u>Defense Counsel</u>: Okay. . . .

<u>Examination by Plaintiff's Counsel</u>:

<u>Plaintiff's Counsel</u>: For a detective to turn off a

monitor so somebody could meet privately, they would come right next to your desk, wouldn't they?

<u>Chauvin</u>: Yes.

<u>Plaintiff's Counsel</u>: Do you ever recall a detective coming next to your desk to turn off a monitor in a situation like that? Is that why you're struggling with it?

<u>Chauvin</u>: I mean, I have on[e] case that I think it may have happened in. But I'm not 100 percent sure.

<u>Plaintiff's Counsel</u>: Okay. And why do you think it may have happened?

<u>Chauvin</u>: Um – I mean, I have a – I think Dante Bond, and the attorney was, um – Peter John. I think that may have happened in that case.

(Rec. Doc. 52-7, p. 3). Based solely on this deposition testimony, Plaintiff argues that:

> the Sheriff's Office created a reasonable expectation of privacy when it informed a criminal defendant and his attorney that the detectives would "give them a few minutes" alone in the room and would "turn the monitor off." By giving the attorney and his client an expectation that they wouldn't be recorded, the expectation of privacy is created … . It is undisputed that the conversations were recorded by the Milestone video motion-activated recording despite the detective's assurances to the contrary.

(Rec. Doc. 63, p. 8).

Even assuming, arguendo, that a detective's statement that he would give a suspect and his attorney "a few minutes" and would "turn the monitor off" would be sufficient to create a reasonable expectation of privacy on the part of the suspect in an interrogation room, the Court finds that Ms. Chauvin's admittedly speculative testimony is insufficient to create a genuine issue of

17

material fact as to whether any detective ever made such a statement. Ms. Chauvin admits that although she recalls a few cases where attorneys were present, she does not recall whether an attorney ever spent any time alone in an interrogation room with his or her client. The closest that Ms. Chauvin's deposition testimony comes to creating a genuine issue of material fact as to whether the Sheriff's Office might have violated some reasonable expectation of privacy is Ms. Chauvin's statement that "I think that may have happened in that case" with reference to defendant Dante Bond. Plaintiff's motion for summary judgment should be denied on this issue because Ms. Chauvin's deposition testimony is clearly insufficient to entitle Plaintiff to a directed verdict if the evidence went uncontroverted at trial. For purposes of Sheriff Tregre's motion, Sheriff Tregre has pointed to a lack of evidence in the record with respect to this issue, and Plaintiff has failed to meet his burden to refer to *specific* facts showing that a genuine issue exists. Therefore, the Court finds that there is no genuine issue of material fact as to whether the Sheriff's Office violated any reasonable expectation of privacy, and thus violated the Fourth Amendment.

### c. Louisiana Wiretapping Laws

A finding that a defendant has violated the Louisiana Wiretapping Statute, La. R.S. § 15:1303, also requires a finding that there was a reasonable expectation of privacy. *Louisiana v.*

*Smith*, 2002-2736 (La. App. 4 Cir. 5/21/03); 848 So.2d 650, 654. Therefore, for the reasons expressed above with respect to the Fourth Amendment, the Court finds that there is no genuine issue of material fact as to whether the Sheriff's Office violated the Louisiana Wiretapping Statute.

### d. Disclosure of Evidence: La. Code Crim. Proc. Art. 716 & *Brady*

Plaintiff claims that the Sheriff's Office violated Article 716 of the Louisiana Code of Criminal Procedure, which is a discovery rule requiring the court to order the District Attorney to disclose certain evidence to a criminal defendant, upon written motion of the defendant. LA. CODE CRIM. PROC. ANN. art. 716 (2014). This rule is "intended to eliminate unwarranted prejudice arising from surprise testimony and evidence, to permit the defense to meet the state's case, and to allow a proper assessment of the strength of its evidence in preparing a defense." *State v. Allen*, 94-2262 (La. 11/13/95); 663 So.2d 686, 688. When the government violates this procedural rule during the pendency of a criminal proceeding, the court has discretion to design a remedy that serves the interests of justice. Louisiana v. Clark, 446 So.2d 293, 296 (La. 1984). Available remedies include mistrial, exclusion of the government's evidence, and calling a recess to allow defense counsel to examine the government's evidence and prepare to meet it. *See id.; Louisiana v. Williams*, 632 So.2d 893, 894 (La. App. 2

Cir. 1994); *Louisiana v. Williams*, 457 So.2d 902 (La. App. 3 Cir. 1984), *cert. denied*, 461 So.2d 313 (La. 1984). The Court finds that there is no independent, substantive cause of action for violation of this procedural rule outside of a particular criminal proceeding.

With respect to *Brady v. Maryland*, according to the Supreme Court of the United States:

> There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Plaintiff has failed to submit sufficient evidence to show that the Sheriff's Office actually failed to turn over any evidence that was favorable to any particular accused and actually caused prejudice. Plaintiff has thus failed to show that the Sheriff's Office's failure to disclose any recordings constitutes an actual violation of state law. Therefore, the Court finds that Plaintiff has not met his burden of proof to show that the Sheriff's Office committed an actual violation of law that will support Plaintiff's claim under the Whistleblower Statute. Accordingly, Plaintiff's claim should be dismissed with prejudice.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion for Summary Judgment* **(Rec. Doc. 52)** is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's *Motion for Summary Judgment* **(Rec. Doc. 56)** is hereby **GRANTED.**[6]

**IT IS FURTHER ORDERED** that all of Plaintiff's claims against Defendant in the above-captioned matter are hereby **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 11th day of September, 2014.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[6] Because the Court finds that Plaintiff has failed to raise a genuine issue of material fact as to any of his claims, and therefore that Sheriff Tregre's motion should be granted, the Court has not addressed the parties' arguments regarding Sheriff Tregre's potential qualified immunity defense.